CHAMBERS OF
SUSAN K. GAUVEY
U.S. MAGISTRATE JUDGE

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
MDD_skgchambers@mdd.uscourts.gov
(410) 962-4953
(410) 962-2985 – Fax

August 8, 2013

Randell McKnight
1509 Pressman Street
Baltimore, MD 21217

Alex S. Gordon
Assistant United States Attorney
36 South Charles Street, 4th Floor
Baltimore, MD 21201

    Re: Randell McKnight v. Office of Disability Adjudication
        and Review
        Civil No. SKG-12-2901

Dear Mr. McKnight and Counsel:

Plaintiff Randell McKnight ("Mr. McKnight") filed a complaint in this Court challenging the final decision of the Acting Commissioner of the Social Security Administration ("the Commissioner") regarding his claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under sections 205(g) and 1631(c)(3) of the Social Security Act ("the Act"). Defendant, the Office of Disability Adjudication and Review, filed this motion seeking summary judgment affirming the decision. This case has been referred to the undersigned magistrate judge by consent of the parties pursuant to 28 U.S.C. § 636(c) and Local Rule 301. (ECF 6, 14). No hearing is necessary. Local Rule 105.6.

1

Currently pending before the Court is defendant's motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. (ECF No. 23-1). Plaintiff has not responded to this motion (ECF No. 24), but the Court has reviewed the decision of the Administrative Law Judge ("ALJ") in full.[1] For the reasons that follow, this Court GRANTS defendant's motion for summary judgment and AFFIRMS the decision of the Commissioner.

## I. Procedural History

On November 4, 2009, Mr. McKnight filed a Title II application for disability insurance benefits, as well as a Title XVI application for supplemental security income. (R. 12). Mr. McKnight was last insured on March 31, 2012. Id. He claimed disability beginning February 1, 2009. Id. On April 13, 2010, plaintiff's applications were denied at the initial level; on December 20, 2010, they were denied again upon reconsideration. (R. 66, 70). The plaintiff subsequently requested a hearing, which was held before ALJ Vivian W. Mittleman on November 21, 2011. (R. 12). That same day, the ALJ issued a partially favorable decision that Mr. McKnight was not disabled within the meaning of the Act prior to July 5, 2011, but became disabled on that date and has remained disabled since. (R. 12).

---

[1] Mr. McKnight had the opportunity to file a cross-motion for summary judgment, but did not do so despite an extension of time from the Court. (ECF No. 22)

The Appeals Council denied plaintiff's request for review, making the ALJ's decision the final decision of the Agency. (R. 1). Plaintiff now seeks review of that decision pursuant to 42 U.S.C. § 405 (g).

**II. Factual History**

The Court has reviewed the defendant's Statement of the Facts (ECF No. 23-1, 2-10) and, finding that it accurately represents the record in all material respects, hereby adopts it.

**III. Defendant's Motion for Summary Judgment**

In his Complaint, the plaintiff did not identify any specific errors in the Commissioner's decision. The Court assumes he is challenging the Commissioner's rejection of any disability onset date earlier than July 5, 2011, as otherwise the decision was favorable. The defendant argues that the Acting Commissioner was correct in deciding that Mr. McKnight was disabled within the meaning of the Social Security Act since July 5, 2011, but not before. Specifically, the defendant avers that this decision was both reasonable and supported by substantial evidence in the record, and thus plaintiff's appeal should be denied. The defendant's arguments are well-taken and considered in the Court's review of the ALJ's findings.

**IV. Standard of Review**

The function of this Court on review is to leave the findings of fact to the agency and to determine upon the whole record

whether the agency's decision is supported by substantial evidence, not to try plaintiff's claim de novo. King v. Califano, 599 F.2d 597, 598 (4th Cir. 1979). This Court must uphold the Commissioner's decision if it is supported by substantial evidence and if the ALJ employed the proper legal standards. 42 U.S.C. §§ 405(g), 1383(c)(3) (2001); Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996); Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987). Substantial evidence "consists of more than a scintilla of evidence but may be somewhat less than a preponderance." Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966). It is "such relevant evidence as a reasonable mind might accept to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (internal quotations omitted).

In reviewing the decision, this Court will not re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Commissioner. Craig, 76 F.3d at 589; Hayes v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). The Commissioner, as fact finder, is responsible for resolving conflicts in the evidence. Snyder v. Ribicoff, 307 F.2d 518, 520 (4th Cir. 1962). If the Commissioner's findings are supported by substantial evidence, this Court is bound to accept them. Underwood v. Ribicoff, 298 F.2d 850 (4th Cir. 1962). However, despite deference to the Commissioner's findings of fact, "a factual finding by the ALJ is not binding if it was

reached by means of an improper standard or misapplication of the law." Coffman, 829 F.2d at 517. The Court has authority under 42 U.S.C. § 405(g) to affirm, modify, or reverse the decision of the agency "with or without remanding the case for a rehearing." Melkonyan v. Sullivan, 501 U.S. 89, 98 (1991).

## V. Discussion of ALJ Findings

As noted, plaintiff offers no arguments in response to defendant's motion for summary judgment. Accordingly, the Court has no specific issues within the ALJ's decision to address, but reviews it in its entirety. The Court finds that the ALJ's determinations were proper under the law.

In reviewing a claimant's eligibility for DIB and SSI, an ALJ must consider all of the evidence in the record and follow the sequential five-step analysis set forth in the regulations to determine whether the claimant is disabled as defined by the Act. 20 C.F.R § 416.920(a). If the agency can make a disability determination at any point in the sequential analysis, it does not review the claim further. 20 C.F.R. § 404.1520(a)(4).[2] After proceeding through each of the required steps, the ALJ in this case concluded that Mr. McKnight was not disabled as

---

[2] Disability is defined in the Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 416(i)(1)(A).

5

defined by the Act prior to July 5, 2011, but was disabled after that date. (R. 12).

**A. Step One**

At the first step, the claimant must prove that he is not engaged in "substantial gainful activity."[3] 20 C.F.R. § 416.920(a)(4)(i). If the ALJ finds that the claimant is engaged in "substantial gainful activity," he or she will not be considered disabled. Id. The ALJ concluded that Mr. McKnight had not engaged in substantial gainful activity since the alleged onset date. (R. 15). The ALJ noted that Mr. McKnight denied working at all during this period, though this was contradicted by a report that he had visited the emergency room during that same period because of an injury sustained while working for a local mover. Id. Regardless, the ALJ concluded that such work did not rise to the level of substantial gainful activity, as it was unreported and impossible to determine how much money was earned. Id.

Defendant argues that the ALJ properly completed this step, and the Court agrees. (ECF No. 23-1, 16). While unreported work is not categorically excluded from qualifying as

---

[3] Substantial gainful activity is defined as "work activity that is both substantial and gainful." 20 C.F.R. § 416.972. Work activity is substantial if it involves doing significant physical or mental activities and even if it is part time or if plaintiff is doing less, being paid less, or has fewer responsibilities than when she worked before. 20 C.F.R. § 416.972(b). Substantial gainful activity does not include activities such as household tasks, taking care of oneself, social programs, or therapy. 20 C.F.R. § 416.972(c).

6

substantial gainful activity, it may contribute to an incomplete record which fails to illustrate "significant physical or mental activities" sufficient to be considered substantial work activity. 20 CFR § 404.1572(a); See Drumheller v. Astrue, No. 3:07CV0001, 2008 WL 114909, at *1 n.1 (W.D. Va. Jan. 10, 2008)(affirming ALJ decision which, in part, noted that the claimant's "significant" unreported work could likely qualify as substantial gainful activity but for the incomplete nature of the record). The ALJ properly noted that, even including occasional temporary work, claimant's record did not illustrate any substantial work activity. (R. 15). The ALJ's analysis of this issue was accordingly proper.

**B. Step Two**

At the second step, the ALJ must determine whether the claimant has a severe, medically determinable impairment or a combination of impairments that limit his ability to perform basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c); see also 20 C.F.R. §§ 404.1521, 416.921. In addition, there is a durational requirement that the claimant's impairment last or be expected to last for at least 12 months. 20 C.F.R. § 416.909.

Upon review, the ALJ determined that several of Mr. McKnight's impairments qualify as severe, including: degenerative disc disease of the lumbar spine, asthma, drug and alcohol abuse, and adjustment disorder with depressed mood and

7

anxiety. (R.15). The ALJ also concluded that Mr. McKnight had several non-severe conditions, including bilateral bunion deformity and status post surgical repair of recurrent rectal abscess. The ALJ noted that these conditions are repairable and thus not normally expected to last a continuous 12 months; notably, Mr. McKnight was only precluded from surgery because of his refusal to quit smoking. (R. 15, 572).

Defendant asserts that the ALJ properly completed Step two of the sequential evaluation process, and this Court agrees. (ECF No. 23-1, 16-17). The ALJ sufficiently followed 20 C.F.R. § 416.921, which asks whether the conditions would have "more than a minimal effect on the claimant's ability to perform basic work activities." (R. 15). In addition, the ALJ reviewed the duration of Mr. McKnight's impairments, as well as his non-compliance with prescribed treatment, to find several impairments non-severe. Id. This is appropriate under 20 C.F.R. § 416.909, which requires an impairment to last 12 months to be considered severe, and 20 C.F.R. § 404.1530, which requires a claimant to follow prescribed treatment. The ALJ followed the proper steps for making her finding.

**C. Step Three**

At the third step, the ALJ considers whether the claimant's impairments, either individually or in combination, meet or equal an impairment enumerated in the "Listing of Impairments"

8

in 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. § 416.920(a)(4)(iii). If one of the Listings is met, disability will be found without consideration of age, education, or work experience. 20 C.F.R. §§ 404.1520(d), 416.920(d). Here, the ALJ found that Mr. McKnight does not have an impairment or combination of impairments that meet or equal an impairment enumerated in the Listings (R. 17). Specifically, the ALJ reviewed Listings 1.04 (disorder of the spine), 3.01 (chronic pulmonary insufficiency), and the mental disorders listings. (R. 15).

In order to meet Listing 1.04 regarding a disorder of the spine, the claimant must show medical documents evidencing the compromise of a nerve root or the spinal cord. 20 CFR § 404, Subpart P, Appendix 1. (R. 15). The ALJ examined the record, and, finding no such evidence existed, concluded that Mr. McKnight's impairment did not meet the requirements of Listing 1.04. (R. 15).

Similarly, the ALJ did not find evidence sufficient to show chronic pulmonary insufficiency under Listing 3.01. (R. 15). That listing requires the claimant have chronic obstructive pulmonary disease with the FEV equal to or less than the values specified in Table I or chronic restrictive ventilator disease with the FVC equal to or less than the values specified in Table II (both provided in the Appendix). 20 CFR § 404, Subpart P,

9

Appendix 1. The ALJ examined the record and found that two separate tests established claimant's FEV and FVC values as well above the listing levels for his height, even despite the fact that the claimant "gave very poor effort" during one of the tests. (R. 15).

Defendant correctly notes that a claimant must demonstrate impairments which, alone or in combination, satisfy all the elements of a listed impairment to meet the Listing. (ECF No. 23-1, 17)(citing Sullivan v. Zebley, et al., 493 U.S. 521, 530 (1990)). It is clear from the written decision of the ALJ that Mr. McKnight did not meet this burden in regard to Listings 1.04 (disorder of the spine) and 3.01 (chronic pulmonary insufficiency). (R. 14-15). Accordingly, this Court finds the ALJ's evaluation of these impairments to be in accordance with governing law and the record.

Next, the ALJ evaluated Mr. McKnight's mental limitations and found they did not meet the requirements of the broad mental impairment listings of 20 CFR § 404, Subpart P, Appendix 1. (R. 16). A mental impairment must meet the requirements of the Listing's "paragraph A" and "paragraph B" or "paragraph C" alone. 20 CFR § 404, Subpart P, Appendix 1. "Paragraph A" requires documentation of a medically persistent impairment; "paragraph B" considers what limitations are caused by the impairment. Id. If paragraphs "A" and "B" are not met, the

claimant may demonstrate "paragraph C," which looks at whether the limitation has resulted in a period of at least two years where the claimant faced "more than a minimal limitation of ability to do basic work activities." Id.

In addressing this issue, the ALJ recognized that Mr. McKnight does not evidence signs and symptoms of any particular mental disorder under "paragraph A" of 20 CFR § 404, Subpart P, Appendix 1. (R. 16). See Huntington v. Apfel, 101 F.Supp 2d 384 (D. Md. 2000)(noting that when there is no factual or medical support for much of a Listing, the ALJ need not compare medical evidence to the record in her written decision). The ALJ did, however, recognize that Mr. McKnight faces several limitations consistent with mental disorders and described in paragraph B, including: moderate restriction in activities of daily living, moderate difficulties in maintaining social functioning, and moderate difficulties in maintaining concentration, persistence, or pace. Id. This is critical to note because even if a claimant fails to meet a Listing, the "cumulative effect the impairments ha[ve] on the claimant's ability to work" may be disabling. Walker v. Brown, 889 F.2d 47, 49 (4th Cir. 1989).

The ALJ determined, however, that the cumulative effects of Mr. McKnight's limitations do not rise to the level of any Listing. (R. 16). Defendant asserts this determination was

proper, as claimant failed to show his impairments met the severity of any Listing. (ECF No. 23-1, 17). This Court agrees, but notes that the ALJ's explanation in this section is in some respects wanting, though not legally inadequate. For example, the ALJ failed to explicitly elaborate on the finding that Mr. McKnight suffered from moderate difficulties in maintaining concentration, persistence or pace. (R. 16). This is in contrast to the more fully developed discussion of Mr. McKnight's limitations regarding activities of daily living, where the ALJ alluded to evidence regarding his personal care, shopping habits, and completion of chores. Id. Similarly, the ALJ properly evaluated Mr. McKnight's social functioning by considering his capacity to interact with others in a variety of circumstances, including on public transportation and during individual encounters. Id. It is understandably difficult to evaluate an unemployed claimant's ability regarding concentration, persistence, or pace, when such ability is often assessed in work settings. 20 CFR § 404, Subpart P, Appendix 1. However, it would have been preferable for the ALJ to, at minimum, discuss available evidence supporting her conclusion, such as Mr. McKnight's participation in college-level courses, his ability to complete assigned tasks at work, especially the supervision of other workers, and his ability to plan his schedule independently. (R. 21, 192-204, 205-213).

Finally, the ALJ considered Mr. McKnight's functional ability under "paragraph C." 20 CFR § 404, Subpart P, Appendix 1. Specifically, the ALJ noted that Mr. McKnight has not faced any episodes of decomposition of extended duration, and has the ability to function outside of a "highly supportive living arrangement." 20 CFR § 404, Subpart P, Appendix 1; (R. 17). Again, the defendant asserts that the ALJ engaged in a proper evaluation of the record under the law, and this Court agrees. Id.; (R. 17).

Before an ALJ advances to the fourth step of the sequential analysis, she must assess the claimant's "residual functional capacity" ("RFC"), which is used at the fourth and fifth steps of the analysis. 20 C.F.R. § 404.1520(e). RFC is an assessment of an individual's ability to do sustained, work-related physical and mental activities in a work setting on a regular and continuing basis. Social Security Ruling (SSR) 96-8p. The ALJ must consider even those impairments that are not "severe." 20 C.F.R. § 404.1545(a)(2). In determining a claimant's RFC, ALJs evaluate the claimant's subjective symptoms, such as allegations of pain, using a two-part test. Craig v. Chater, 76 F.3d 585, 594 (4th Cir. 1996); 20 C.F.R. § 404.1529. First, the ALJ must determine whether objective evidence shows the existence of a medical impairment that could reasonably be expected to produce the actual alleged symptoms. 20 C.F.R. §

404.1529(b). Second, the ALJ must consider all the available evidence, including medical history, objective medical evidence, and statements by the claimant, to evaluate the extent to which the symptoms limit the claimant's capacity to work. 20 C.F.R. § 404.1529(c). As part of this evaluation, the ALJ assesses the credibility of the claimant's statements, as symptoms can sometimes manifest at a greater level of severity of impairment than is shown by solely objective medical evidence. SSR 96-7p. In determining credibility, the ALJ should consider factors such as the claimant's daily activities, treatments he has received for his symptoms, medications, and any other factors contributing to functional limitations. Id.

Here, the ALJ determined that, with his substance abuse, Mr. McKnight has the RFC to perform light work,[4] except that he is further limited to: occasional balancing, stooping, kneeling, crouching, crawling, and climbing ramps or stairs; never climbing ladders, ropes or scaffolds; avoiding concentrated exposure to fumes, odors, dusts, gases, and poor ventilation;

---

[4] The ALJ pointed to the definition of "light work" as provided in 20 CFR 404.1567(b) and 416.967(b), which read as follows: "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time."

avoiding all hazards, such as machinery and heights; simple, routine, repetitive work; and, has poor to no ability to work with others or deal with work stress. (R. 17).

At the first step in determining RFC, the ALJ found that medical opinions and other evidence show that Mr. McKnight's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." (R. 17). At the second step, however, the ALJ concluded the claimant could not be considered credible. (R. 17). In viewing the record as a whole, the ALJ noted Mr. McKnight's credibility was degraded by: his frequent drug and alcohol use, including appearing to be under the influence at his hearing; his inconsistent gait, which is very often observed to be normal during his mental health appointments, but abnormal when seeking refills on his pain medications; and his denial of having worked in 2009, despite evidence on the record to the contrary. (R. 17-19).

Defendant argues that the ALJ gave appropriate consideration to Mr. McKnight's credibility and allegations of pain. This Court agrees, and notes that the credibility of a claimant is often best determined by an ALJ. See Shively v. Heckler, 739 F.2d 987, 989-90 (4th Cir. 1984)(explaining that, because an ALJ has the "opportunity to observe the demeanor and to determine the credibility of the claimant," the ALJ's opinion on the matter of credibility is to be given great weight). The

ALJ engaged in the proper two-step test to determine RFC, considering a variety of relevant medical evidence as well as testimony from the hearing. (R. 17-19). The ALJ's decision regarding Mr. McKnight's credibility is thus proper. (R. 17-19).

### D. Step Four

At the fourth step of the sequential analysis, the ALJ must consider whether the claimant retains the RFC necessary to perform past relevant work. 20 C.F.R. §§ 404.1520(e), 416.920(e). The ALJ relied on the Vocational Expert's ("VE") testimony that Mr. McKnight's past relevant work, as a mover's helper, was unskilled and heavy to very heavy in exertion, his work as a delivery driver was semi-skilled and heavy in exertion, and his work as a temporary laborer was unskilled and heavy to very exertion. (R. 19). The ALJ concluded that the claimant, being now limited to only light exertion, is unable to perform his past relevant work. (R. 19).

Defendant believes this step was performed properly, and this Court agrees. (ECF No. 23-1, 20). The role of a VE in assessing a claimant's ability to perform past relevant work is to "assist the ALJ in determining whether there is work available in the national economy which th[e] particular claimant can perform." Walker v. Brown, 889 F.2d 47, 50 (4th Cir. 1989); 20 C.F.R. § 404.1560(b)(2). To be of use, the VE

must be familiar with the record and respond to hypothetical questions which include all of the claimant's impairments. Walker, 889 F.2d at 50-51. Here, the VE testified that he reviewed the vocational history in this case, and he responded to a hypothetical which fairly laid out Mr. McKnight's impairments. (R. 47-50). Again, the ALJ's used the proper method to come to a conclusion supported by the record and expert testimony.

**E. Step Five**

Where, as here, the claimant is unable to resume his past relevant work, the ALJ proceeds to the fifth and final step of the sequential analysis. This step requires consideration of whether, in light of vocational factors such as age, education, work experience, and RFC, the claimant is capable of other work in the national economy. 20 C.F.R. §§ 404.1520(g) and 416.920(g). At this step, the burden of proof shifts to the agency to establish that the claimant retains the RFC to engage in an alternative job which exists in the national economy. McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983); Wilson v. 11 Califano, 617 F.2d 1050, 1053 (4th Cir. 1980). The agency must prove both the claimant's capacity to perform the job and that the job is available. Grant v. Schweiker, 699 F.2d 189, 191 (4th Cir. 1983). Before the agency may conclude that the claimant can perform alternative skilled or semi-skilled

work, it must show that he possesses skills that are transferable to those alternative positions or that no such transferable skills are necessary. McLain, 715 F.2d at 869.

In this case, the ALJ found that, due to limitations from all his impairments including substance abuse disorders, Mr. McKnight is unable to make "a successful vocational adjustment to work that exists in significant numbers in the national economy." (R. 20). The ALJ accordingly found claimant disabled. Id. This conclusion was proper, in particular because the ALJ took into consideration relevant factors, such as the claimant's age, education (noting that Mr. McKnight possessed no transferable skills), work experience, and residual functioning capacity. (R. 20-21); 20 CFR § 404, Subpart P, Appendix 2.

Finally, the ALJ reviewed whether the claimant's substance abuse was a contributing factor to his disability; if so, the disability finding would not stand. 20 CFR §§404.1535 and 416.935 (R. 14). The ALJ concluded that, even without his drug and alcohol abuse, Mr. McKnight's remaining limitations regarding capability for only light, not medium or heavy exertion, prevented him from performing past relevant work. (R. 24). However, the ALJ further concluded that, before Mr. McKnight turned 55 and became a person of advanced age, Mr. McKnight would have been able to perform other jobs existing in

significant numbers in the national economy had he refrained from substance abuse. Id. Accordingly, the ALJ found that Mr. McKnight was not disabled prior to his 55th birthday on July 5, 2011, because substance abuse was a contributing factor material to the disability determination at that time. Id. After that date, however, the exertional limitations, his age, education, and work experience qualified him as disabled regardless of his substance use. Id.

Defendant argues that the ALJ properly considered the VE's testimony and record to conclude that Mr. McKnight's substance abuse prevented a finding of disabled before July 5, 2011. (ECF No. 23-1, 22). Indeed, the consideration of whether Mr. McKnight's disability designation was based on his substance abuse is proper. In Blankenship v. Astrue, 635 F.Supp.2d 447 (W.D. Va. 2009), the United States District Court of the Western District of Virginia considered a similar case where the ALJ determined that the claimant, who suffered liver damage from alcoholism, was not disabled because she "could have worked on a regular and sustained basis had she abstained from the use of alcohol." Similarly, the testimony of the VE supports the conclusion that Mr. McKnight could have worked prior to July 5, 2011, but for his substance abuse. (R. 49-50). While there certainly is evidence in the record supporting a disability determination prior to July 2011 (e.g., being unable to lift

more than 20 pounds), there is also certainly evidence in the record demonstrating his major substance abuse prior to July 2011 affecting his ability to work (see, e.g., his Mental Residual Functional Capacity Assessment from December 17, 2010). (R. 19, 442-44). The written decision of the ALJ included an extensive and useful discussion of such evidence. (R. 16-19). Accordingly, the ALJ properly ruled the claimant was not disabled prior to July 5, 2011.

**VI. Conclusion**

For the foregoing reasons, the Court hereby GRANTS defendant's motion for summary judgment and AFFIRMS the decision of the Commissioner.


Date: 8/8/2013                             /S/
                                    Susan K. Gauvey
                                    United States Magistrate Judge